UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TYRONE SPRIGGS

VERSUS

JEFFREY WILEY, *individually and in his
official capacity as Sheriff of Ascension Parish*,
ET AL.

CIVIL ACTION

NO. 11-316-JJB

**RULING AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is a motion for summary judgment filed by defendants Jeffrey Wiley and Sam Caston (Doc. 9) against plaintiff Tyrone Spriggs. Spriggs filed an opposition (Doc. 11), and defendants filed a reply (Doc. 13). Wiley is the sheriff of Ascension Parish, Louisiana. Caston serves as a deputy sheriff there. This case involves allegations of false imprisonment[1] arising under the Fourth Amendment and 42 U.S.C. § 1983 against both defendants; negligent hiring, training, supervision and retention of deputy sheriffs by Wiley; and general negligence by Caston, all arising out of Caston's investigation of, issuance of a warrant for, and the ultimate arrest but subsequent release of Spriggs on charges related to attempted first degree murder. Oral argument is unnecessary. Jurisdiction exists under 28 U.S.C. §§ 1331.

I.

The following facts are undisputed based on the arrest warrant affidavit submitted by Deputy Caston. (Doc. 9-4). On September 21, 2009, the Ascension Parish Sheriff's Office responded to a shootout between two opposing parties occurring in Darrow, Louisiana. As patrol units arriving on the scene to investigate, two subjects named Brian Russell and Jeremy Davis were being admitted to a nearby hospital with gunshot wounds.

---

[1] The complaint denominates the cause of action as both false arrest and false imprisonment. However, because "the former is a species of the latter," *Wallace v. Kato*, 549 U.S. 384, 388 (2007), the Court will refer only to false imprisonment.

1

The next day, Deputy Caston interviewed Russell, who stated two friends—Tyrone Spriggs and another man later identified as Lee Brown—and he were driving[2] to visit other friends. Russell pulled the vehicle into a home, in front of which several people were located when they arrived. Russell encountered a man named Jason Claiborne, with whom he had an argument. According to Russell, Claiborne drew a gun and began firing at him and his friends, including Spriggs. This firefight resulted in bullet wounds to his right shoulder.

Caston also interviewed Davis, a member of the opposite party, who stated that he arrived at the scene in a car with a group of friends, including a man named "Jay." A white car pulled up and a skinny black male got out of the car and began arguing with Jay.[3] Davis alleged the skinny black male was the aggressor and that his bullet eventually struck Davis as he crawled out of the car he had sat in during the encounter.

Caston subsequently interviewed Russell again, who advised that Spriggs had handed him the pistol which he used to shoot back at the opposing party once they began firing. (Transcript of Russell Interview, Doc. 13-1).

Due to the inconsistencies of Russell's and Davis's stories, Deputy Caston found it impossible to know who the aggressor was and sought an arrest warrant for all parties involved, including Spriggs. The warrant issued on September 23, 2009, based on Spriggs's alleged commission of four counts of acting as a principal to attempted first degree murder in violation of La. R.S. 14:24, 14:27, and 14:30. (Arrest Warrant, Doc. 9-4).

Spriggs was arrested on September 24, 2009, and subsequently charged with three counts of accessory after the fact to attempted first degree murder via a bill of information submitted by

---

[2] Russell later told police the car they were driving was a white Chevrolet Impala. (Doc. 13-1, at 3).
[3] The reasonable inference to be drawn from Davis' statement, as recounted by Deputy Caston in the affidavit supporting the arrest warrant issued for Spriggs, is that the "white car" Davis identified was the Impala driven by Russell, and his companion "Jay" was Jason Claiborne. (*See* Warrant Affidavit, Doc. 9-4, at 1-2).

the district attorney for the 23rd Judicial District on November 20, 2009. (Bill of Information, Doc. 9-6). Spriggs was formally arraigned as to those charges on January 19, 2010. (Court Minutes, Doc. 9-7). On May 10, 2010, upon preliminary examination, a judge of the 23rd Judicial District Court found no probable cause to support the charges and ordered Spriggs released. (*Id.*). Spriggs was formally released from custody on May 11, 2010. (Statement of Material Facts, Doc. 12, ¶ 8).

Spriggs filed this action on May 11, 2011 (*see* Doc. 1), exactly one year following his release from custody. He asserts false imprisonment claims against both Wiley and Caston in their individual and official capacities, as well as a claim for negligent operation and oversight against Sheriff Wiley and general negligence against Deputy Caston. The complaint seeks compensatory damages of $50,000 and punitive damages of $100,000.

II.

Defendants move for summary judgment based primarily on prescription. They argue the one year limitations period Louisiana law provides for in La. C.C. art. 3492 began to run once judicial process was afforded Spriggs. Spriggs argues the prescriptive period did not begin running until he was released from custody on May 11, 2010, making his action proper.

Alternatively, defendants contend the warrant was based on probable cause and obtained in good faith, making the false arrest actions improper as a matter of law. Spriggs contends Deputy Caston knowingly made a false statement to the magistrate who approved the arrest warrant.

Defendants also argue for qualified immunity for Deputy Caston and point out the lack of proof regarding an established policy or custom which served as the cause in fact for the false arrest or for Deputy Caston's wrongful behavior in securing the arrest, such that the negligence

3

claim against Sheriff Wiley must fail. Spriggs argues that Caston's affidavit facially shows a lack of probable cause due to Caston's acknowledgement that everyone involved in the gunfight was being arrested due to the conflicting stories of Russell and Davis. Further, Spriggs again argues that Caston's alleged falsification of Spriggs' role, based on Russell's interview, defeats qualified immunity. Finally, Spriggs argues the allegations in the complaint fairly make out a negligence claim against Wiley such that summary judgment for him would be unwarranted.

III.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th

Cir. 1991), *cert. denied*, 507 U.S. 1051. If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

IV.

A.

Spriggs's false imprisonment claims against defendants arise by virtue of the Fourth Amendment and 42 U.S.C. § 1983, which holds state officers acting under color of state law liable for constitutional violations. Section 1983 provides a federal cause of action, but it looks to state law to determine the limitations period applicable for personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The parties agree that Louisiana's one year prescriptive period for personal injuries applies. *See* La. C.C. art. 3492 ("Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."). However, Spriggs believes the continuing tort doctrine and the *contra non valentem* exception to prescription delayed the running of the one year period until he was released or at least until the preliminary examination established the lack of probable cause. In support, he cites *Corsey v. State Dep't of Corrections*, 375 So.2d 1319 (La. 1979), for the sweeping proposition that incarceration suspends prescription.

*Corsey* recounted the familiar exceptions for prescription based upon the ancient civilian doctrine of *contra non valentem*. Four exceptions exist: (1) where a legal cause prevented the courts or their officers from accepting a plaintiff's action; (2) where a contractual condition or a condition in the proceedings prevented a creditor from acting; (3) where the debtor or wrongdoer himself performed some act effectively preventing the plaintiff from pursuing the cause of action; and (4) where the cause of action is not known or reasonably knowable to the plaintiff.

5

*Corsey*, 375 So.2d at 1321-22. *Corsey* recognized that Louisiana jurisprudence distinguishes between personal disabilities of the plaintiff (which do not suspend prescription) and an inability to bring suit caused by something foreign to the plaintiff (which does suspend prescription). *Id.* at 1322-23. *Corsey* simply held that *contra non valentem* applied when a defendant's wrongful conduct caused an inmate-plaintiff's mental incompetency such that he could not know he had a cause of action, even though traditionally mental incompetency (absent interdiction) did not support a *contra non valentem* exception. *Id.* at 1323-24. Thus, contrary to plaintiff's broad contention, *Corsey* provides no special shelter for persons hampered from filing suit simply by virtue of their confinement alone.

Moreover, whatever Louisiana's continuing tort doctrine may otherwise hold, *Wallace* has clearly spoken on the issue. While state law provides the applicable limitations period, federal law resolves the accrual date. *Wallace* confirms that although causes of action normally accrue "as soon as the allegedly wrongful arrest occurred, subjecting [plaintiff] to the harm of involuntary detention," 549 U.S. at 388, a special rule governs the running of false imprisonment actions. Perhaps because victims may not be able to sue while still imprisoned, the limitations period begins to run "when the allegedly false imprisonment ends." *Id.* at 389 (internal quotations and citation omitted). However, because false imprisonment theory is premised on "detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*…." *Id.* (emphasis in original) (citation omitted). Legal process generally begins, and thus the false imprisonment tolling begins, at arraignment. *Id.* At that point, the tort of false imprisonment ends, and the entirely distinct torts of malicious prosecution

6

and/or wrongful use of judicial process provide the available remedy. *Id.* at 390 (citations omitted).[4]

Therefore, Spriggs's suit is untimely. It is undisputed he was formally arraigned on January 19, 2010, meaning his suit must have been brought within one year of that date to fit within the limitations period. Suit commenced on May 15, 2011, making the false imprisonment claims untimely. Summary judgment on these claims is therefore warranted based on prescription.

B.

The remaining negligence claims must also fall. Even assuming the prescriptive period for the negligence claim against Deputy Caston could conceivably begin running only once the probable cause determination was made and Spriggs's release ordered under the continuing tort doctrine or *contra non valentem*, Spriggs has not alleged such wide-ranging negligence by Caston. Rather, Spriggs alleges the lack of thorough investigation and alleged falsification of the warrant affidavit caused his injury through the arrest.[5] In that regard, this claim may be indistinguishable from and subsumed within the false imprisonment claim. In any event, though, prescription has run on this claim since Caston's investigation, the issuance of the affidavit, and Spriggs's arrest all occurred more than one year before suit.[6]

---

[4] Spriggs's attempt to distinguish *Wallace* falls short. While Spriggs claims that, unlike in *Wallace*, the legal process holding Tyrone Spriggs was based on the tortious conduct of the defendant, it is enough to say that such tortious conduct could be redressed through a separate claim for malicious prosecution or wrongful use of judicial process, as *Wallace* explicitly noted.

[5] Spriggs's only other "evidence" consists of pure argument and unsupported assertions regarding what took place at the preliminary examination that resulted in Spriggs's release. (*See* Memo. in Opp. Doc. 11, at 8-9 (describing alleged testimony at preliminary examination without introducing transcripts or other documents verifying these statements)). This is simply not competent evidence on a summary judgment motion. *See Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991), *cert. denied*, 507 U.S. 1051.

[6] Indeed, Spriggs's only argument against prescription of the negligence claims was based on the same arguments of *contra non valemtem*—presumably, that Spriggs was confined and could not file suit—rejected above. (*See* Memo. in Opp., Doc. 11, § E, at 12).

The negligence claim against Sheriff Wiley fares no better. Spriggs identifies no evidence to support his claim, relying only on the assertions contained in his complaint. (*See* Memo. in Opp., Doc. 11, § D, at 11-12). Because unsworn pleadings do not constitute competent summary judgment evidence, *Larry v. White*, 929 F.2d at 211, n. 12, Spriggs cannot defeat summary judgment on this claim either.

V.

Accordingly, it is ORDERED that defendants' motion for summary judgment (Doc. 9) is hereby GRANTED in full.

Signed in Baton Rouge, Louisiana, on April 4, 2012.

_____
**JAMES J. BRADY, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**